David A. JOHNSON, individually and as partner in United Investment Group, a Minnesota Partnership, Melvin Roth and Thomas E. Brever, Trustee for Equivest International, Inc., a Minnesota corporation, Plaintiffs,

v.

James H. SCHOPF, Paul DeZiel, Robert Reuss, Earl Boven, Douglass Sause, Kenneth Williams, Alvin S. Malmon, and Smith, Juster, Feikema, Malmon & Haskvitz, Defendants.

Civ. No. 4–86–870.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 15, 1987.

tional, Inc. ("Equivest"), a now bankrupt corporation. Shareholder plaintiffs David Johnson and Melvin Roth have asserted claims against former officers and directors of Equivest for violations of federal and state securities law, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 *et seq.*, common law fraud, and misrepresentation. Johnson and Roth have also raised a claim against attorney Alvin S. Malmon and the law firm of Smith, Juster, Feikema, Malmon & Haskvitz ("Smith, Juster") for aiding and abetting the alleged securities violations. Equivest's Trustee in Bankruptcy has also raised, on behalf of the corporation, a negligence claim against Malmon and Smith, Juster.

Former Equivest directors Earl Boven, Robert Reuss and Douglass Sause now move to dismiss plaintiffs' RICO claims for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment to dismiss the RICO counts.[1] Fed.R.Civ.P. 12(b)(6), 56. Defendants Malmon and Smith, Juster move to dismiss the Trustee's negligence claim for lack of subject matter jurisdiction.

## FACTS

Equivest was incorporated on February 24, 1984. Later in that same year, Equivest intended to raise capital by distributing a Private Placement Offering Circular to potential investors in Equivest common stock. At the company's direction, defendant Malmon and his associate Mark Haggerty, drafted and filed the offering circular. The circular listed Smith, Juster as counsel to the company and stated that Smith, Juster had "rendered an opinion on the legality of the corporate status of the company." Attorneys Malmon and Haggerty assert that they prepared the information in the circular based upon representations made to them by Equivest's officers and directors.

The offering circular was subsequently distributed to prospective investors in Equi-

Stephen P. Kelly, and Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiffs.

Phillip A. Cole, and Lommen, Nelson, Cole & Stageberg, Minneapolis, Minn., for defendants Malmon and Smith, Juster, Feikema, Malmon & Haskvitz.

George R. Serdar, and Bowman and London, Ltd., St. Paul, Minn., for defendants Reuss and Sause;

Lauren Lonergan, and Hart, Bruner, O'Brien & Thornton, Minneapolis, Minn., for defendant Earl H. Boven.

## MEMORANDUM AND OPINION

DOTY, District Judge.

The claims in this case arise out of each parties' involvement with Equivest Interna-

---

1. Because the Court has entertained matters outside the pleadings, the motion shall be treated as one for summary judgment. Fed.R.Civ.P. 12(b).

vest common stock. Plaintiff shareholders Johnson and Roth were among those who received the circular. Plaintiffs allege that the offering circular contained false and misleading information and failed to state material facts including, but not limited to, the following:

(a) A statement that Equivest owned 245,000 shares of stock in ATR Electronics, Inc. when in fact that stock was owned by defendants Schopf, Boven and Sause and "contributed" by them to Equivest as payment for their capital stock subscriptions;

(b) Non-disclosure of the fact that Equivest had assumed a demand promissory note for $78,000 transferred to it by defendant Boven and secured by the ATR stock;

(c) Non-disclosure of the fact that defendants Schopf, Boven and Sause had extensive investments in ATR as well as close association with ATR's management;

(d) A statement that Equivest wholly owned the Cardinal Corporation when it in fact did not;

(e) Non-disclosure of agreements to pay third parties more than $300,000.

Plaintiffs' Complaint, par. 21.

Plaintiffs Johnson and Roth contend that they purchased the Equivest common stock in reliance on the information contained in the offering circular, and that but for such reliance, neither Johnson nor Roth would have purchased the stock. In addition to claiming fraud, misrepresentation and violations of securities law, Johnson and Roth allege that the conduct of former Equivest directors Schopf, DeZiel, Boven, Reuss and Sause amounts to racketeering in violation of 18 U.S.C. § 1961 *et seq.* Specifically, plaintiffs claim violations of § 1962(a) (Prohibiting the use or investment of income derived from a pattern of racketeering activity in a RICO enterprise), § 1962(c) (prohibiting a person from conducting the affairs of a RICO enterprise through a pattern of racketeering activity) and § 1962(d) (making unlawful a conspiracy to violate any of the other RICO sections). Defendants Boven, Reuss and Sause now move to

dismiss plaintiffs' RICO claims, asserting that plaintiffs have shown neither the existence of a RICO "enterprise" nor of a "pattern" of racketeering activity as required by 18 U.S.C. § 1961.

Equivest's Trustee in Bankruptcy claims that Malmon and Smith, Juster negligently failed to obtain or convey information to the corporation regarding the allegedly false and misleading representations contained in the offering circular. Defendants Malmon and Smith, Juster move to dismiss the claim without prejudice for lack of subject matter jurisdiction.

The Court will first address plaintiffs' RICO allegations then turn to the question whether the Court has subject matter jurisdiction over the Trustee's negligence claim.

## DISCUSSION

### I. The RICO Allegations

In order to establish a RICO cause of action, plaintiffs must prove that defendants conducted an "enterprise" through a "pattern" of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Defendants move to dismiss plaintiffs' RICO claims on the grounds that plaintiffs have failed to show either a "pattern" of racketeering activity or the existence of a RICO "enterprise."

### A. Pattern of Racketeering Activity

An essential element of the civil RICO cause of action is proof that defendants have engaged in a "pattern of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. at 496, 105 S.Ct. at 3285; *Holmberg v. Morrisette,* 800 F.2d 205, 209 (8th Cir.1986); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 255 (8th Cir.1986). The "pattern" requirement of § 1961(5) has eluded precise definition. The section itself provides little guidance, offering merely that "a pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court interpreted § 1961(5) to imply that "while two acts (of racketeering activity) are necessary, they may not be suffi-

cient. Indeed, in common parlance, two of anything do not generally form a "pattern"." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court further noted that the legislative history also supports the view that two isolated acts of racketeering activity do not constitute a "pattern": "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 91–617, p. 158 (1969)) (emphasis added).

■ The United States Court of Appeals for the Eighth Circuit has embraced the "continuity plus relationship" analysis of the pattern requirement. *See Holmberg v. Morrisette*, 800 F.2d 205; *Superior Oil Co. v. Fulmer*, 785 F.2d 252. In order to establish a pattern of racketeering activity plaintiffs must allege and prove (1) relationship, and (2) continuity. "Relationship" is established by proof of several related acts in furtherance of a single criminal scheme. *See Superior Oil*, 785 F.2d at 257; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 653 F.Supp. 908, 911 (D.Minn. 1987) *appeal docketed*, 829 F.2d 648 (8th Cir.1987). "Continuity" is demonstrated by proof that defendants have committed the same or similar racketeering activities in the past or are engaged in other criminal activities elsewhere. *Holmberg*, 800 F.2d at 210–211; *Superior Oil*, 785 F.2d at 257; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 653 F.Supp. at 911.

In *Superior Oil*, the Court held that several related acts of mail and wire fraud as part of a single scheme to divert natural gas from plaintiff's pipeline satisfied the "relationship" prong of the pattern require-

ment. The Court concluded, however, that defendant's conduct did not amount to a pattern of racketeering activity because the "continuity" prong had not been satisfied—plaintiff failed to present any evidence suggesting that such activities had occurred previously or that the individuals involved were engaged in other criminal activities. *Superior Oil*, 785 F.2d at 257. In *Holmberg*, the plaintiff's RICO claim was also dismissed for failure to prove the "continuity" necessary to form a "pattern" of racketeering activity. *Holmberg*, 800 F.2d at 210.

Notwithstanding the multiple instances of fraudulent conduct present in both *Superior Oil* and *Holmberg*, the Court refused to find a pattern of racketeering activity because all of defendants' actions were committed in furtherance of a *single* fraudulent scheme. In both cases, the Court observed that "it places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity"." *Holmberg*, 800 F.2d at 210; *Superior Oil*, 785 F.2d at 257 (quoting *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill. 1985).

■ *Superior Oil* and *Holmberg* make clear that in order to establish a pattern of racketeering activity, RICO plaintiffs must prove more than multiple fraudulent acts in support of a single scheme—they must prove the existence of *multiple schemes*.[2] *See Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326, 329 (8th Cir.1986); *Holmberg*, 800 F.2d at 210; *Superior Oil*, 785 F.2d at 257; *H.J. Inc.*, 653 F.Supp. at 914–915. Plaintiffs claim that defendants conducted separate racketeering schemes on at least two occasions. These "schemes" allegedly evince an ongoing pattern of racketeering activity in which the defendants enter into existing or newly

---

**2.** An earlier case, *Alexander Grant & Co. v. Tiffany Industries, Inc.*, 770 F.2d 717 (8th Cir. 1985), *modifying* 742 F.2d 408 (1984), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986), implies that allegations of twenty-six acts of mail fraud and four acts of wire fraud may support a finding of a pattern of racketeer-

ing activity. However, even if the implication in *Alexander* is consistent with the Eighth Circuit's subsequent holdings in *Superior Oil* and *Holmberg*, the number and nature of the acts alleged by plaintiffs fail to satisfy the *Sedima* pattern requirement.

formed business ventures, inflate current performance figures, overstate the potential success of the business, solicit the money of new investors, then bail out after taking the profit and leaving the corporation bankrupt.

The first "scheme" alleged by plaintiffs will be called the "Equivest venture." Plaintiffs claim that defendants committed at least two acts of mail, wire and securities fraud in connection with the sale of Equivest stock to Johnson and Roth, and that these acts were committed in furtherance of a "scheme" to defraud plaintiffs and other prospective shareholders in the Equivest corporation. Assuming, arguendo, that such a "scheme" existed and that multiple mail or wire communications were made in furtherance thereof, it remains apparent that such communications were merely constituents of a single, unified activity. Standing alone, the acts allegedly committed in furtherance of the Equivest venture do not establish a "pattern" of racketeering activity. Thus, in order to meet the *Superior Oil-Holmberg* "pattern" requirement, plaintiffs must demonstrate the existence of an additional "scheme".

Accordingly, plaintiffs have alleged an additional scheme to defraud investors in connection with the purchase and operation of a dairy farm called "Timmer Farms." Plaintiffs claim that in February of 1981, defendant Schopf entered into a purchase agreement to buy Timmer Farms for $4,250,000. After signing the purchase agreement, Schopf allegedly formed a corporation called "Agricorp", to which he later transferred his interest in Timmer Farms. Plaintiffs assert that because the stock subscriptions to Agricorp were not sufficient to fund the Timmer Farms purchase, Schopf sought outside investors to fund the venture. Plaintiffs claim that at some time prior to the closing date, Schopf held a meeting to induce investors to contribute money for the purchase of Timmer Farms. At the meeting, Schopf and Boven allegedly represented that they knew the farm management business, that they could double Timmer Farms' profits, and that Timmer Farms would operate four stores that would each generate $5,000 profit per week.

Plaintiffs claim that these representations were false and misleading and that such representations induced investors present at the meeting to purchase Agricorp and its interest in Timmer Farms. According to plaintiffs, the farming operation subsequently failed, causing one investor to lose nearly 1.5 million dollars. Plaintiffs further claim that defendants Schopf, Boven and Sause used the mail and interstate wire communications on more than two occasions in furtherance of their alleged scheme to defraud investors in the Timmer Farms venture.

Plaintiffs' allegations, if true, probably support the finding of a racketeering "scheme" in connection with the Timmer Farms operation. But plaintiffs must do more than merely *allege* the existence of a scheme—they must produce evidence showing that defendants committed racketeering activities.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once a properly supported motion for summary judgment has been made, the onus is on the nonmoving party to produce some evidence demonstrating the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The quantum of proof that the adverse party must produce is not susceptible of precise measurement, but it is clear that the nonmoving party must produce enough evi-

dence so that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2510.

■ In the instant case, the evidence offered by plaintiffs falls far short of that required of a nonmoving party to withstand summary judgment. Plaintiffs submitted three exhibits in support of their allegations of racketeering activity in connection with the Timmer Farms venture.[3] One of the exhibits is a copy of an irrelevant status report of Timmer Farms for the week ending April 24, 1982.[4] The report was not written by any of the defendants, it does not refer to any of the defendants, and no inference of impropriety may be gleaned from the document. Another of plaintiffs' exhibits is a copy of a check drawn on the Timmer Farms' account payable to defendant Sause.[5] The exhibit provides ample evidence of a relationship between Sause and Timmer Farms, but adds no support to plaintiffs' allegations of wrongdoing in connection with the Timmer Farms transaction. Plaintiffs' third exhibit suffers a similar defect.[6] Although the exhibit adequately shows that defendant Boven may have had an employment relationship with Timmer Farms, this document, like the others, lends no support to plaintiffs' allegations of racketeering activity.

In order to sustain their RICO claims, plaintiffs must demonstrate that defendants engaged in a pattern of racketeering activity. *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. To show the existence of a "pattern" of racketeering activity, plaintiffs must establish the "continuity" prong of the *Sedima* pattern test, i.e. that defendants conducted more than one racketeering "scheme." *See Deviries v. Prudential-*

*Bache Securities, Inc.*, 805 F.2d at 329; *Holmberg*, 800 F.2d at 210; *Superior Oil*, 785 F.2d at 257; *H.J. Inc.*, 653 F.Supp. at 914–15. Proof of a racketeering "scheme" necessarily requires a showing of some wrongful activity—mere allegations of wrongdoing will not suffice. *See Holmberg*, 800 F.2d at 210; *Superior Oil*, 785 F.2d at 257. In the instant case, plaintiffs produced no evidence of racketeering activity in connection with the Timmer Farms venture. Consequently, the Timmer Farms venture may not be considered a racketeering "scheme". Without evidence of a second "scheme", there is insufficient evidence of a pattern of racketeering activity and plaintiffs' RICO claims must be dismissed.

### B. RICO "Enterprise"

Plaintiffs' failure to satisfy the "continuity" prong of the *Sedima* pattern test is fully dispositive of plaintiffs' RICO claims. Accordingly, the Court finds it unnecessary to decide whether defendants conducted a RICO "enterprise."

### II. Trustee's Negligence Claims

Defendants Malmon and Smith, Juster assert that the Court lacks federal subject matter jurisdiction to decide the Trustee's negligence claim. Specifically, defendants assert that the Trustee's claim is not properly pendent to the underlying federal claim and that the Trustee is not a proper pendent party to this action. Defendants concede, however, that the Court *may* exercise jurisdiction over the action under 28 U.S.C. § 1334(b) which enables a district court to decide a case "related to" a title 11 bankruptcy action.[7]

Defendants do not dispute that the case at bar relates to a Title 11 proceeding. Rather, defendants urge the Court to ab-

---

**3.** Plaintiffs also submitted two affidavits not considered by the Court due to a complete lack of evidentiary value. The affidavits submitted are merely the sworn statements of plaintiffs' counsel reasserting the allegations contained in plaintiffs' Complaint. *See* April 15, 1987 and June 30, 1987, affidavits of Stephen P. Kelly.

**4.** Exhibit 2, appended to April 15, 1987 affidavit of Stephen P. Kelly.

**5.** Exhibit A. appended to June 30, 1987 affidavit of Stephen P. Kelly.

**6.** Exhibit 1, appended to April 15, 1987 affidavit of Stephen P. Kelly.

**7.** 28 U.S.C. § 1334(b) states, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction in all civil proceedings arising under title 11, or arising in or related to cases under title 11."

stain from hearing the case pursuant to 28 U.S.C. § 1334(c)(1).[8]

▉ Upon careful consideration of the respective interests of plaintiff and defendants, the Court will exercise jurisdiction over the Trustee's negligence claim. The Court is persuaded that exercising jurisdiction over the Trustee's claim will serve the interests of judicial economy and avoid needless delay in the litigation. The Court is also satisfied that defendants' interests will not be significantly prejudiced by the Court's exercise of jurisdiction. Defendants' motion to dismiss the Trustee's negligence claim for lack of subject matter jurisdiction is therefore denied.

IT IS HEREBY ORDERED:

1. Defendants' motion for summary judgment on plaintiffs' RICO claims is granted;

2. Count IV of plaintiffs' Complaint is hereby dismissed with prejudice as to defendants Earl Boven, Douglass Sause and Robert Reuss;

3. Defendants Alvin S. Malmon and Smith, Juster, Feikema, Malmon & Haskvitz's motion to dismiss the Trustee's negligence claim for lack of subject matter jurisdiction is denied.

---

**8.** 28 U.S.C. § 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.